ROBINSON v. MUTUAL RESERVE LIFE INS. CO.

(Circuit Court, S. D. New York. December 26, 1907.)

1. INSURANCE—MUTUAL COMPANIES—MEETINGS—NOTICE.

The by-laws of a mutual insurance company contained no provision for notice of a special meeting at which amendments of the by-laws might be adopted, but declared that notice of annual meetings should be given by publication for three consecutive days, at least five days prior thereto, in two daily newspapers published in New York. Insurance Law N. Y., Laws 1892, p. 2013, c. 690, § 209, requires every mutual insurance company to cause amendments proposed to any by-laws to be mailed to its members, so as to give them not less than five days' notice of the time and place where they are to be considered. *Held*, that such article amounts to a requirement that reasonable notice should be given, and that

five days' notice was not sufficient, where the amendments proposed were complicated and the members were scattered over the United States and foreign countries.

**2.** SAME—MISAPPLICATION OF FUNDS—INJUNCTION—SUIT BY MEMBERS.

A bill by the holder of an assessment policy in defendant company, on behalf of himself and all others similarly situated, charging that defendant had fraudulently misapplied a fund collected as a reserve fund from assessments for the benefit of the owners of such policies, and had fraudulently charged liens against them to the amount of about 30 per cent. of their face value, had fraudulently assessed the assessment policy holders for the purpose of maintaining a reserve required by law for the level premium insurance, in which the assessment policy holders were not interested, and that the officers of defendant company had wasted and misapplied its assets, so that it was insolvent, stated a ground for equitable relief, in so far as it prayed for an accounting for the cancellation of the liens, and the ascertainment of the amounts of the assessment policies.

Julius M. Mayer and Wm. Hepburn Russell, for the motion.
E. B. Hatch, opposed.

WARD, Circuit Judge. This is a petition by the complainant for an injunction restraining the respondent, its officers and agents, and certain persons holding proxies from adopting proposed amendments to the respondent's by-laws at a meeting called for December 10, 1907. Upon this petition an order to show cause why the injunction should not issue was granted, with a temporary restraining order against the holders of the proxies using them for any other purpose at the meeting than to organize and adjourn the same.

The complainant became a member of the respondent while it was doing business on a purely assessment plan under the name of the Mutual Reserve Fund Life Association. His contract of insurance, dated March 20, 1884, was expressed in a policy which was to be (article 10) "governed by, subject to, and construed only according to the constitution and by-laws and regulations of said association and the laws of the state of New York. * * *" It was provided in the constitution and by-laws (article 12) that they might be amended at any annual or special meeting called for the purpose by a two-thirds vote of the members present in person or by proxy. January 23, 1901, the by-laws were amended so as to subject assessment policies to a lien for their equitable share of any deficiency of the reserve required by the by-laws or by the policies to be determined by the actuary as an interest-bearing loan constituting a lien upon the policy, and also that the by-laws might be amended by a majority, instead of a two-thirds vote. The complainant alleges that this was done to enable the association to report itself as solvent to the insurance department of the state of New York, either by deducting the amount of these liens from its liabilities or by crediting them as loans in its assets.

April 17, 1902, the directors of the association reincorporated under chapter 690, p. 1930, Laws 1892, and amendments thereto, changed its name to Mutual Reserve Life Insurance Company, and added to its business insurance on the level premium plan. January 23, 1903, the by-laws were again amended to their present form. The Supreme Court of the United States in the case of Polk v. This Same

Defendant, 28 Sup. Ct. 65, 52 L. Ed. ——, has decided that the reincorporation under the changed name did not create a new corporation and was not in violation of the contract rights of the policy holders. The petition states that F. A. Burnham, then president of the association, passed the first amendment to the by-laws imposing liens upon the policies by voting about 33,000 proxies given for a previous meeting and not good for the meeting at which they were voted. Reference was made to the report of the Armstrong legislative investigating committee, which was submitted by both parties to me, and shows that the proxies were good for ten years for any purpose, and were therefore properly voted. I am quite satisfied that these liens, which the complainant says amount to about $2,000,000, or, as the respondent admits, to about $700,000, are necessary to satisfy the insurance department of the state of New York that the respondent is solvent.

The respondent notified its members, who are about 50,000 in number, scattered all over this country, Canada, and foreign countries, that a meeting would be held in New York City December 10, 1907, to consider certain proposed amendments to the by-laws. The circular setting forth the proposed amendments and the existing by-laws, a letter of explanation from the president, who had lately come into the company, and a blank proxy running to him and to two other persons representing the management, were mailed to members living in foreign countries November 15th, to members living within a radius of New York that could be reached within 24 hours December 2d, and to members living in other parts of the United States November 25, 1907. The amendments are long, complicated, technical and very difficult to be understood. The amendment specially affecting the assessment above mentioned is to sections 2 and 3 of article 7, and it authorizes the company's actuary to report between December 15th and 30th in every year, beginning in 1907, the condition of the company in respect to assets and liabilities, and if his report shows a deficiency in the net value of the funds applicable to assessment policies in force the board of directors are required to assess the policies with their equitable share of the deficiency, together with a margin for shrinkage not exceeding 12½ per cent., the assessment to be a lien and charge against the policies; the first of such liens to cover any outstanding charges, liens, or deficiencies theretofore levied upon or accrued against the policies. The apparent purpose of this provision is to remove all doubt as to the validity of the liens theretofore assessed, and I understand it to be admitted that liens to the amount of about $700,000 must be established to be carried as assets if the company is to continue in business.

I refer to the circular of the president, not because there was any obligation on his part to issue one, but because it is relied on as explaining to the policy holders the complicated situation of affairs. In it he called their attention very fully to features of the proposed amendments with reference to the method of collecting assessments in the future, but said nothing on the subject of these prior assessments, and I am satisfied that an ordinary person, reading both documents, would not appreciate the importance of the amendment in respect to them.

The officers of the company certainly appreciated the situation of the holders of assessment policies on this point, because August 21, 1907, the president reported to the board of directors:

"That uncertainties have existed in the past and do exist at the present time in the minds of some at least of the assessment policy holders of the company as to the status of their policies is apparent to me from correspondence which has been brought to my attention from time to time during the past three months. I regard it as of vital importance, not only as regards the question of fairness to individual policy holders, but as regards the interests of the corporation as a whole, that these uncertainties shall be resolved."

Although this language was used with reference to a proposal to the assessment policy holders to transfer their insurance from the assessment to what is known as the level premium plan, it shows that the president felt the necessity of advising the members of the precise condition of their assessment policies in view of the uncertainty of many on the subject, and that was what he proposed should be done. But at the meeting of November 8, 1907, this resolution was rescinded and the course actually pursued of sending out the notice, letter of explanation, and proxy above referred to was substituted; the president saying on this subject:

"It will be noted, from a reading of the proposed amendments, that if they are adopted the carrying out of the provisions thereof will necessarily convey to policy holders full information as to the status of their policies, and will thus supersede and render unnecessary such special notice as was contemplated by the resolution of August 21, 1907."

Of course, the carrying out of the amendments, if adopted, would inform the members; but the information proposed in the August resolution would have given them timely information, in the light of which they could have acted upon the proposed amendments much more intelligently. There is no provision in the by-laws as to the notice to be given of a special meeting at which amendments to the by-laws are to be considered; but section 2 of article 11 provides that notice of annual meetings shall be given by publication for three consecutive days at least five days prior thereto in two daily newspapers published in the city of New York, which was done. Section 209 of the insurance law (Laws 1892, p. 2013, c. 690) requires every mutual insurance company to cause amendments proposed to any by-law to be mailed to its members, so as to give them not less than five days' notice of the time and place where the same are to be considered. I think this amounts to a requirement to give members reasonable notice, and that, in view of the very complicated amendments proposed and the very insufficient explanation accompanying them, the five days' notice given in this case was not reasonable.

At the meeting of December 10th the restraining order being in full force, nothing was left to be done but to organize and adjourn. No secretary was appointed, nor any tellers; but each party has submitted a stenographic report of what occurred, which reports in some respects differ. Confining my attention entirely to the report furnished by the officers of the company, I am compelled to say, without passing upon the truth of the charges made upon one side or the other, and allow-

ing for the natural heat which a prolonged contest creates, that the treatment of the objecting members was most high-handed. Assuming, without finding, that the meeting of December 10th was properly organized and adjourned, is the complainant entitled to relief?

He has filed a bill, on behalf of himself as a member and policy holder of the respondent, and of all others in a similar situation, charging that the respondent has fraudulently misapplied a fund collected as a reserve fund created out of assessments upon the holders of assessment policies for their own benefit; has fraudulently charged liens against those policies to the amount of about 30 per cent. of their face value; has fraudulently assessed the assessment policy holders for the purpose of maintaining a reserve required by law for the level premium insurance, in which they are not interested; and, finally, that the officers heretofore in control of the respondent at the time the bill was filed have wasted and fraudulently misapplied the assets, so that the respondent is insolvent. Conceding that, since the decision of the United States Supreme Court in the Polk Case, the Mutual Reserve Fund Life Association and the Mutual Reserve Life Insurance Company are the same corporation, and that the contract rights of the assessment policy holders were not invalidated by the reincorporation; and conceding, also, for the purposes of argument, respondent's contention that the complainant has no standing to ask the court to wind up the business of the respondent, even if insolvent—still I think there is enough left in the structure of the bill to give this court equitable jurisdiction of the complainant's prayer for an accounting and for the cancellation of the liens and the ascertainment of the amounts of the assessment policies, if he can make good the charges in the bill.

The restraining order heretofore granted is continued until an order be prepared and entered requiring respondent to mail to its members at least 30 days before the date of an adjourned meeting a notice that the meeting called for December 10th has been adjourned to the date fixed as aforesaid, because the notice originally given was in the opinion of the court too short to afford an opportunity for sufficient deliberation, especially with reference to the amendment of sections 2 and 3 of article 7 of the by-laws with reference to liens theretofore imposed upon the assessment policies.